UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUBURBAN TOWING, INC. <br> an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF HOMEWOOD, ILLINOIS, <br> an Illinois municipal corporation, and <br> RICHARD HOFELD, in his individual <br> and official capacity, <br><br> Defendants. | Case No. 11 C 3304 <br><br> Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

The plaintiff, Suburban Towing, Inc. ("Suburban") brings suit under 42 U.S.C. § 1983, alleging violations of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. The defendants have moved to dismiss all counts, and for the reasons stated below, the court grants the motion.

**I. BACKGROUND**

Suburban brings suit under 42 U.S.C. § 1983, alleging that the defendants, the Village of Homewood ("the Village") and the Village's president, Richard Hofeld, violated the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. The complaint alleges that since 1955, Suburban (or its predecessor) regularly and frequently towed vehicles at the request of the Village's police department, which was authorized to select towing service operators under Section 106-357(a) of the Village's Municipal Code. That changed on September 14, 2010, when the Village (by Hofeld and its Board of Trustees) enacted Ordinance No. MC-836 ("the Ordinance").

This Ordinance, which went into effect immediately, amended Chapter 34 of the Municipal Code to create a "Police Towing License System." According to the Ordinance, the amendment was intended to "establish regulations and standards" for private tow companies seeking referrals from the Village's police department, so as to "ensure that motorists are referred to reputable companies and individuals."

The Ordinance described three types of towing licenses that the Village would grant: light duty (three licenses available), medium duty (two licenses available), and heavy duty (two licenses available). The application period was to run from October 1st to October 15th each year. After the application period closed, the Village would create an "initial eligibility list" of names. The first names on each list were to be those firms that had been granted a license the previous year (assuming they had submitted a renewal application), while additional spots, if any, would be filled by a random drawing from the remaining applicants. The police department then would conduct an investigation into each applicant, verifying the information contained in the application and inspecting the applicant's towing equipment and business location. From those applicants that successfully completed the process, the Village would create a "final eligibility list" which it would use to issue police towing licenses. The licenses were valid from January 1st to December 31st of the following year.

Suburban satisfied the Village's investigation and approval process, and it was placed on the final eligibility list. However, Suburban ultimately did not receive a license. On information and belief, it claims that the Village's chief of police conducted only two drawings, even though the Ordinance created three license classes. Suburban now argues that the terms of the Ordinance required the Village to grant licenses to *all*

towing services that satisfied the Village's approval process; Suburban also argues that it should have been treated as a prior licensee and received priority on the lists, because it had provided towing services for the Village in 2010—the year before the Ordinance was enacted—and the Village had created a legitimate expectation of a continued relationship.

Suburban filed a four-count complaint, alleging that the defendants (1) violated Suburban's rights under the Equal Protection Clause by intentionally treating Suburban differently than other similarly situated towing companies for no rational reason and without a legitimate government objective; (2) violated Suburban's rights under the Equal Protection Clause by treating Suburban as a "class of one" due to "an illegitimate, unjustified personal animus"; (3) violated Suburban's procedural due process rights, because Suburban did not receive a pre- or post-deprivation hearing; and finally (4) violated Suburban's substantive due process rights, because Suburban had a legitimate expectation of providing towing services and it has no adequate state remedy or administrative procedure by which to challenge the Village's decision. The defendants have moved to dismiss all counts.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the defendant may seek to dismiss the case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). But although Federal Rule of Civil Procedure 8(a) only requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," nonetheless the complaint must include "more than labels and conclusions, and a

3

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 566 U.S. 662 (2009) (noting that while Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Id.* In other words, to survive a motion to dismiss post-*Twombly*, "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)).

### III. ANALYSIS

The court first turns to Suburban's equal protection claims. Suburban believes that it was treated differently than other similarly situated towing companies. The defendants in turn argue that the Ordinance created a police towing system where none previously existed, which meant that in 2011 no one was entitled to (or in fact received) priority under the licensing program. The defendants also point out that Suburban was not selected for a license by virtue of the same random drawing to which every company was subjected. They argue that Suburban does not want equal protection, but preferential treatment. The defendants are correct.

Because Suburban is not a member of a suspect class and it does not allege that the defendants deprived it of a fundamental right, the appropriate standard of review is rational basis. *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) (citing *Vision*

4

*Church v. Vill. of Long Grove*, 468 F.3d 975, 1000-01 (7th Cir. 2006)). In general, plaintiffs seeking to bring equal protection claims must establish that "(1) the state actor intentionally treated plaintiffs differently from others similarly situated; (2) this difference in treatment was caused by the plaintiffs' membership in the class to which they belong; and (3) this different treatment was not rationally related to a legitimate state interest." *Id.* (citing *Smith v. City of Chi.*, 457 F.3d 643, 650-51 (7th Cir. 2006)). When a plaintiff alleges that it is a "class of one," however, the plaintiff does not need to demonstrate the second element. *Id.*

Even without getting into the "class of one" issue, Suburban's equal protection claims fail. First, Suburban has not alleged the existence of *any* similarly situated counterpart that was treated differently than Suburban was treated. Indeed, during the first year that the Ordinance was in effect, all towing companies—including those that had previously received referrals from the police department under Section 106-357(a)—were required to complete an application, pass the investigation, and be chosen by random drawing before they could receive a license. Suburban has not alleged that the defendants gave any other company priority on the eligibility lists or permitted any company to skip the random drawing during that first year. Instead, it complains that it did not receive a license. That was, as they say, the luck of the draw, and bad luck does not a constitutional violation make. *See, e.g.*, *Winters v. Ill. State Bd. of Elections*, 197 F. Supp. 2d 1110, 1117-18 (N.D. Ill. 2001) ("Put simply, the Equal Protection Clause does not apply in the first instance because the tie-breaking provision does not create any sort of classification whatsoever. Instead, it treats both . . . parties exactly the same and singles neither party out for disparate treatment. . . . [E]ach candidate's name is thrown

into the hat only once, so each party stands an equal chance of winning (or losing) the drawing. As a result, the tie-breaking provision does not fall disproportionately on any discrete political party or otherwise afford unequal treatment to different political parties."); *see also LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) ("[D]ismissal at the pleading stage was appropriate because [the plaintiff] failed to allege facts tending to show that it was similarly situated to any of the comparators.").

Second, even assuming *arguendo* that Suburban was treated differently, Suburban has not provided any facts that would indicate it was intentionally discriminated against or that the defendants harbored "an illegitimate, unjustified personal animus" against it. Suburban merely states that these things are true, but *ipse dixit* legal conclusions cannot carry the day. The same is true for Suburban's claim that the defendants' actions were not "rationally related to a legitimate government objective." *See McCauley v. City of Chi.*, --- F.3d ----, 2011 WL 4975644, at *5-6 (7th Cir. 2011) ("Many of the alleged 'facts' are actually legal conclusions or elements of the cause of action, which may be disregarded on a motion to dismiss. For example, [the plaintiff] alleges that . . . '[t]here is no rational basis' for this purported policy. . . . These are the legal elements of the various claims [the plaintiff] has asserted; they are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*."). The court must dismiss these allegations, as there are no facts pleaded to support them.

Suburban's procedural due process claim also fails. Suburban argues that (1) the Municipal Code created a property interest in continued provision of towing services, because the Code authorized the police department to retain the services of towing

companies and required those companies to comply with certain guidelines (such as displaying signage, setting towing rates, and following invoicing procedures), and (2) the defendants violated Suburban's procedural rights by not providing a pre- or post-deprivation hearing. For Suburban to establish its procedural due process claim, it must show that "(1) [it] had a constitutionally protected property interest, (2) [it] suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010). But Suburban only has a protected property interest if it has "a legitimate claim of entitlement, which means an entitlement *established by rule*; hope for a favorable exercise of administrative discretion does not qualify." *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) (emphasis added).

The Municipal Code created no such entitlement. Section 106-357(a) simply states that "[t]he towing of vehicles by the village, or by its approved towing service operators on behalf of the village, shall be authorized only by the police department and only under the circumstances provided in this section." While portions of the pre-2011 Code set out requirements for towing providers *after* they were selected for a job, the Code was silent as to how a provider would be selected for a job in the first instance. Instead, the Code vested discretion in the police department to select appropriate providers. Suburban had no legitimate claim to an entitlement, and therefore does not have a protected property interest. *See Chavers v. Morrow*, 354 F. App'x 938, 940 (5th Cir. 2009) ("[A]lthough the ordinances do provide a tow-rotation scheme that could give rise to a property interest, they do *not* contain the mandatory language required to create such an interest. . . . [because they] do[ ] *not* explicitly require the police departments,

which are charged with maintaining the lists, to place, or keep, on the list any and all companies that meet the ordinances' criteria.") (citations omitted); *see also Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1215 (11th Cir. 1995).

Finally, the court turns to Suburban's substantive due process claim. "Substantive due process challenges involving only the deprivation of a property interest are cognizable where the plaintiff shows 'either the inadequacy of state law remedies or an independent constitutional violation.'" *LaBella Winnetka, Inc.*, 628 F.3d at 943 (quoting *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003), and further noting that when a plaintiff fails to state a class-of-one claim, "it has no independent constitutional violation on which to base its substantive due process claim"). As already noted, the court concludes that there is no cognizable property interest at issue, and for this reason alone Suburban's substantive due process claim cannot survive a motion to dismiss. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) ("[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists.").

Suburban also claims that there are no adequate state remedies to challenge the Village's decision, yet the few facts it marshals in an attempt to support this argument yield the opposite conclusion. First, Suburban argues that "Chapter 106 of the Code does not provide any administrative procedure if one's employment as a towing service is terminated." (Compl. ¶ 42.) Because the police department's decisions under Chapter 106 were entirely discretionary, no administrative procedure was required. Then, Suburban argues that the Ordinance "fails to provide an administrative procedure for towing companies (that provided services to the VILLAGE prior to the enactment of the

Ordinance) to utilize if said companies are not granted a license." (*Id.* ¶ 43.) This is simply not true. The Ordinance provides that during the investigation portion of the application process, "[a]ny applicant deemed ineligible by the Chief of Police will have the right to appeal the Chief of Police's decision to the Village Manager, or designee"; moreover, if someone is granted a license and that license is revoked, the licensee is entitled to a hearing. This is the entirety of what Suburban has to say about the adequacy of state law remedies. As with the others, this claim cannot survive a motion to dismiss.

For these reasons, the court grants the defendants' motion to dismiss all counts. The court will also grant Suburban leave to amend its complaint. On these facts, the court harbors serious doubts as to whether Suburban's next attempt will fare much better, but certain allegations in the complaint persuade the court that Suburban may be able to state a claim if given the opportunity to do so.[1]

### IV. CONCLUSION

The defendants' motion to dismiss is granted. Suburban is given leave to file its amended complaint by March 16, 2012.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 17, 2012

---

[1] In particular, Suburban alleged that "Section 34-103 of the Ordinance creates a list for three license classes and thus three separate drawings to fill those three lists," but that the chief of police "only conducted two drawings for towing companies to be issued licenses." (Compl. ¶ 19.) The court is not clear as to Suburban's point. If Suburban is claiming that there should have been three drawings (a proposition not expressly discussed in the Ordinance), but all licenses were nonetheless granted by random selection, the court does not see a cognizable claim. If instead Suburban is alleging that not all spots were selected by random drawing (*e.g.*, that the Village held random drawings to create two of the license lists, but failed to do so for the third class of licenses) Suburban might be able to state a claim. Without the benefit of briefing, the court takes no position on these issues at this time.